Welcome back. Please be seated. Right. Our last case this morning is Commodities and Minerals Enterprise Limited versus CVG Ferro Minera number 21-14504. Mr. Villaville, if I got that right? Close? Yes, your honor. Very, very well. Okay. Thank you. May please the court. I stand here today to on behalf of Appellant Ferro Minera Orinoco to address the deficiencies in the district court confirmation of a non-domestic arbitral award under the New York based on the single reason that the Ferro Minera had not moved to seek vacator of the award according to Chapter 1 of the Federal Arbitration Act. In our brief, we explain why there was a mistake and why a precedent that is currently in place in the Southern District of Florida is mistaken. So in the meantime, this court has issued the decision incorporation AIC, which is converts all this precedent into an untenable position. And obviously, this panel is really familiar with incorporation AIC, but incorporation AIC, the 11th Circuit was dealing with its own precedent of industrial risk. In industrial risk, the case law of the 11th Circuit, it was that the same reasons to oppose confirmation of an award under the New York Convention were the same reasons to vacate an award under Chapter 1. So that was the precedent for many years, and the Southern District of Florida has been operating under that standard. Incorporation AIC and this court and bank decides that that precedent was a mistake, and it decided to align itself with the other sister circuits in the United States by distinguishing that the reason for confirmation of the New York Convention are different than the reasons to vacate an arbitral award, which are contained in Section 10 of the Federal Arbitration Act. Why this is important to the issue of whether a party that doesn't seek to set aside the arbitral award then can still raise in confirmation proceedings the New York Conventions of Article 5. By considering industrial risk that the same grounds for setting aside an award were similar to the grounds for a confirmation, the 11th Circuit had equaled the two reasons that had created a similar circumstance that happened for domestic awards. According to Section 9 of the Federal Arbitration Act, an award has to be confirmed, a domestic award has to be confirmed, unless it has been vacated. Because that makes that the reasons to vacate the award that are in Section 10 for domestic awards are the same reasons that for confirmation. Therefore, it's clear that this decision in cooling, the cooling decision of this court, is correct. It says that in domestic awards, in domestic awards, if a party doesn't seek vacator, it cannot raise those same defenses later in opposition to confirmation. But this is not the same with respect to New York Convention awards. Your main attack against confirmation in the district court was a public policy defense, right? Correct. Tell me what that public policy defense consists of. What's the argument? The argument is that we are asserting, like we did during arbitration, that the underlying agreements that gave rise to the arbitration were procured by corruption. And that there is, there were significant amount of evidence, circumstantial evidence, red flags, rendering these agreements void and based on corruption. And that the arbitrators, by enforcing these agreements, were advancing corruption and bribery. And that was against the public policy of the United States. However, we don't know what's the end result of this because the district court didn't even get to the argument. It just said, you didn't move to vacate. We are not even entertaining the objection. So that was a very, that's an important difference because in the cases that the district court used as precedence, which is the improper Southern District Court case, and the Grupos Unidos por el Canal, the Southern District Court case. In those cases, even if the courts, the courts said that because the party had not moved to vacate, it could not assert confirmation defenses. Anyway, it analyzed the defenses. Let me ask you a question. Assume arguendo, for the purpose of my question, that we were to agree with you that you ought to be entitled under the convention in Article 5 to assert convention-based public policy defense to a confirmation award, and thus that the district court erred in that regard. The second question would be, whether you prevail on public policy or not. The fact finder here, the arbitrable panel, spent an enormity of time going through it, gave you every opportunity to present whatever you wanted on it, and rejected the claim after a thorough explication of the issues. What's the standard of review that the federal court would have in reviewing that arbitrable determination? It would certainly be very limited review. How limited? What's the standard? Correct. It's limited, and the district court will have to concede that point, but it's not complete. There are issues that if the district court, because we're dealing with public policy, that is the district court- But you don't get to redo the facts in the district court. No. That's the difference. So you have to accept, unless you had a circumstance where the arbitrable panel didn't give you a chance to develop the facts, but where the facts have been fully developed, and you have findings of fact and conclusions reached by the international arbitrable panel. Would this be an issue that we would have to remand to the district court, or would this be an issue that we could decide ourselves? I'm going- The reason I ask it is it strikes me as there's no fact-finding for this court to engage in, or for the district court to engage in, and so it's essentially a legal question based on limited review. Could we review that ourselves, or would we be obliged to send that back, as you see it, to the district court? Assuming, arguendo, you're right on the first point. Your Honor, I think that it will have to be remanded, because part of an argument in our opposition to the confirmation is that there is significant amount of evidence that the arbitrators didn't even consider that go to the issue of whether there was corruption. The panel, in this case, concentrated in the testimony of the Venezuelan prosecutor of the that declared these contracts boy in Venezuela, and also that incarcerated a number of officers of Venezuelan officers for corruption. The panel concentrated only on the question whether the prosecutor could testify whether there has been an actual payment, and whether there has been proven that the claimant had made a specific prepayment to the officers, but it completely disregarded huge amounts of evidence that we submitted, so we believe that we are entitled for the district court to at least consider some of this evidence. It might reach the decision. The reason I ask the question is the standard that we look at, the public policy defense, let's say under Article 5.2b of the convention, we all agree is narrowly circumscribed, and we have said that this defense is very narrow. It applies only when confirmation or enforcement of a foreign arbitration award would violate the forum state's most basic notions of morality and justice. It's a very, very high bar in this case, and we wouldn't be engaged in, nor would the district court be able to engage in fact-finding of its own. You are correct, your honor, and it's a narrow issue, but we believe... a legal question. Would there be any wisdom in us sending it back and spending more wheels, spending more time, and expending more money, if we could answer that question here? Obviously, the court has the power to do so, but again, we believe that we have established in our opposition a substantial amount of evidence that the district court may consider in deciding whether to engage in that analysis. It might be that the district court says, no, I'm not going to do it, but it might be based on all the evidence that we submitted that the district court said, hey, I'm seeing that there was really something bad in this public policy... Second Circuit has suggested that when reviewing an arbitrable award for violations of a public policy, a court, quote, may not revisit or question the fact-finding or the reasoning bearing on the fact-finding which produced the award. Would you have the district court re-engage in fact-finding? To the extent that the arbitrators omitted to look into large amounts of evidence, yes. One response to Judge Marcus's question is that, at the very least, if we're going to consider, if we think you're right on the first point and we're going to address the public policy argument ourselves, neither side has briefed it. Both sides only briefed whether the district court was correct in its procedural ruling. So, I think if we decide we're going to do that, or we might do that, we might well ask both sides to file supplemental briefs on the issue. Wouldn't that solve the issue? My personal view. And it's a view I agree with. Wouldn't that solve the issue? If we gave you 10 days and said, file a brief, go on to the second question, we'll consider it. You can go to the merits of it. We're not allowed to assume that I am correct, that we're not allowed to engage in fact-finding, as the Second Circuit has suggested more than once. We're reviewing under a very narrow window in this case. Wouldn't it resolve the problem if you were given opportunity to brief the issue, which has not been briefed and certainly not decided by the district court? Yes, Your Honor, it will. At the end, we are asking for an opportunity for our objection to be heard. Whether it's heard by the trial court or whether by the Court of Appeals, you are providing the relief that we are requesting. Thank you. I appreciate it. All right. Thank you very much. We'll give you your chance for rebuttal. Thank you. Good afternoon. Bruce Paulson for CME. Morning. Following up on the conversation just had, it is briefly raised on page 22 to 23 of our brief, the public policy defense, and it is raised in our 28-J letter where we incorporated the Second Circuit's decision in the companion case involving the general PR charter, which covers the public policy issues in some detail. Nonetheless, should the court require additional briefing, we'd be happy to provide it, but we do not believe that a remand in this case is necessary. I just want to be very clear on this. Even if we were to hold that the district court was wrong in applying vacator under the FAA and we were to conclude that he was still free to assert the affirmative defense of public policy under the convention, you would have us decide the merits question rather than sending it back? That's correct. CME has waited a very long time for its judgment in this case. The arbitration was commenced in the Obama administration. The award was delivered in 2019. The initial motion to confirm this appeal or confirm the award was made four years ago almost exactly. Even with the impacts that AAIC had on the lower court's ruling, this court, we believe it could decide it on the record before it reached the public policy issue, decided, as your honors have set forth, it is an extremely narrow defense. The Second Circuit lays that out in detail in the companion case that was issued in 2022. Let me just take a step back. The so-called Article V defense that is made by FMO here is that the underlying contract was procured by a corruption. FAA grounds for vacator, and they didn't move to vacate, so that's waived, is that the award was procured by corruption. It seems a bit like an FAA grounds for vacator, but it attacks the underlying contract, not the contract, that if they were moving to vacate under the grounds suggested in the FAA, I'm talking about specifically 9 U.S. Code Section 10A, Chapter 1 of the FAA, none of those grounds would cover corruption in the formation of the contract itself. That's a different question than is covered as a basis for vacator under the FAA. And it is a question for the arbitrators. It's a question for the arbitrators, clearly. And the arbitrators ruled on it. Right, but this is just my gloss on everything, so don't take me at face value, but that's a merits-based argument, it seems to me, which is your public policy defense fails for a number of reasons. Either number one, a judicial body is not the proper place to engage in fact-finding, and after an arbitral tribunal has rendered an award, or number two, the reason you just gave, which is, it just doesn't fall within the meaning of a public policy defense that's so narrowly circumscribed. But that's different than saying, I can't even look at whether or not your public policy defense has any legs. Here's the way I look at the issue after Corporación AIC, and I don't fault anybody for proceeding the way they did in the district court, but your argument only works if the ground for, the ground challenging enforcement now is a ground that would have been available for vacator under the FAA, and if it's not, then you're able to assert the ground now in opposition to confirmation. Why is that wrong? It appears at first glance to be an FAA vacator argument dressed up as a public policy defense, but it does indeed not attack the award, it attacks the underlying contract. The Second Circuit, in its decision, cites United Paperwork as for the proposition that the attack on the underlying contract as being procured by corruption is for the arbitrators to decide. If indeed it is a public policy defense, and I'm not so sure it is, it would have to be analyzed within the very narrow confines set forth by, in the example of jurisprudence, and you've already cited to it, on how narrow a defense this is that have to go to the most uh, and it is frequently raised, but rarely granted. I don't disagree with any of that, but that's a decision essentially on the merits, which is for all these reasons, if you're right, for all these reasons, you lose on your public policy challenge to the arbitral award, and it's going to get confirmed. Right. It's different than saying... The FMO that loses, not my client. No, no, of course, right, but it's different than saying, I'm not even going to look at the argument you've raised because you didn't move to vacate in the first place. I think that ship has sailed under AIC. Yeah. Well, let's, let's go to that question. Help me understand whether Corporacion AIC answered this question or not. As I understand the holding, en banc, it was, and correct me if I've got it wrong, if you move to vacate an arbitrable award under article five of the convention, when the arbitration is held in the United States, chapter one of the FAA provides the grounds for vacater of an arbitrable award. You've got to go to the, the grounds in the FAA in order to be able to do that. That's exactly correct. And that comes in through section 208, the residual. Correct. What the case did not address, I think, is the essential question here. And I want you to correct me if I've misunderstood it. That is whether the failure to move to vacate under chapter one of the FAA bars a party from being able to assert an affirmative defense under article five of the convention to a motion to confirm. Isn't that our question? What AIC did was, I think, clearly disaggregate article five defenses from grounds for vacater under chapter one. For vacater. I agree. The only reason I raised the question is because the residual clause, chapter two implements the convention and it sets forth a residual clause which governs the relationship between the FAA and the convention. And it provides that chapter one applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the convention as ratified by the United States. And what I'm asking is essentially boiling it down to its finest point. Are there not grounds to assert a defense to confirmation under article five that go beyond the grounds for vacater? And I think you've already said yes because it has to be so because you couldn't challenge the inducement to enter into a contract by corruption under the FAA for vacater. None of those provisions would apply. Under the FAA, section 10, if they're arguing here, and they seem to be arguing something different, that the award was procured by a corruption, that would be- But that's not- I agree with you, but I don't see that as the argument. I understand the argument, and Judge Jordan laid it out, is they said there was corruption in the very formation of the entire contract. Which had within it an arbitration proceeding. But the entire contract was replete with corruption. That violated public policy, and that falls within to be under the convention, the recognition or enforcement of an award would be contrary to the public policy of the country. Maybe they're right, maybe they're wrong on the merits. But those grounds would be distinct from the grounds that you would use to justify vacater. Isn't that right? Yes, but the Second Circuit says that this public policy such as it is, defense to confirmation, addressed to the underlying contract being procured by corruption, actually falls outside of Article V. So, whether this is a viable defense, and we're happy to brief it, at all, for vacater or under Article V, is, I think, answered by the Second Circuit. I guess what I'm really asking you is, do the grounds to object to a confirmation on Article V go beyond, and are they broader than the grounds that you can assert to vacate? They are certainly different. Are they, to the extent they are different, can I be barred from raising them because I didn't move to vacate under the FAA? I think that's- Wouldn't that create a conflict? I think that's the ship that sailed with AIC, that the industrial risk and inversiones incorrectly conflated the grounds for vacater with Article V defenses, and AIC pulls them apart, such that if you have, as in this case, failed to timely move to vacate, all you have left is your Article V defenses. Did that case in Bonk hold, not only that you couldn't move to vacate under the convention, but that you couldn't assert an affirmative defense in response to a motion to confirm? That case didn't directly address that question. That's right, and that's why I'm asking you whether that holding squarely answers this question. That holding was concerned with vacater, whether under Chapter 1 of the FAA or whether you were seeking to vacate, even if it was under Article V, a confirmation, but it didn't answer the question of whether you could assert an affirmative defense to a motion. And left that for another day. That's right, and that's why I'm asking you whether the holding in that case disposes of this matter. It seems to me it doesn't. It doesn't dispose of it because we still have the Article V defense, which I'm saying is either a dressed up vacater argument or not a defense. Your argument is, in essence, that if you don't move to vacate, you have your Article V affirmative defenses, but that it doesn't give you the ability, I guess, to vacate the award, to move to vacate the award, but that doesn't really make sense because that's the whole point of affirmative defenses. Right, so the grounds, for instance, like evident partiality under Section 10 is gone if you haven't timely moved. Well, we've already addressed that. Exactly. But the point I think that we're both trying to make is that if there are affirmative defenses that go beyond any grounds that are found for vacater under Chapter 1, you'd have a real conflict if you said they couldn't be raised under Article V. It's another question to say that corruption in the formation of a contract doesn't fall within the ambit of Article V. I'm not sure that that's right. Perhaps it is, but to the extent the affirmative defenses go beyond and are different from, although they plainly overlap, but to the extent that they go beyond the vacater reasons or rationale, it seems to me you would have a conflict if you said that somebody couldn't raise it as an affirmative defense to a confirmation under Article V in an international arbitration. That sounds correct to me. Okay. All right. In any event, our view is that our client has waited a long time for judgment here. Additional briefing, we're open to do it. We do believe that there are grounds in the record to confirm this award and affirm the result below. Before I forget, I'll do it now rather than after Mr. Villeville speaks. So, I've conferred, Judge Marcus and I both said it openly that we agree that there should be supplemental briefing and I conferred with Judge Legault and she agrees too. So, we'll give you two weeks from this Friday. So, you have two weeks from this Friday, which I think will be the 22nd of December, to file letter briefs with regards to the merits issue of the public policy argument made below. You are not limited in any way in formulating your response to that. So, Mr. Paulson, for you, for example, it can be that as you suggested maybe that this is really fraud dressed up as public policy or you can argue that even if it isn't that public policy fails because it's so narrow and the issue of corruption in the underlying contract is in the words of the Second Circuit for the arbitrator. Mr. Villeville, you can argue that given the way you see the arbitral proceeding and the way that it went that there are facts, evidence that the arbitrators didn't consider that the district court is entitled to consider and so we're not an evidentiary tribunal, but you can lay out what you think that evidence is and if we end up agreeing with you, then obviously it's going to have to go to the district court for fact finding, but you can lay out what the public policy argument is, why you think you prevail and why you think, for example, that the Second Circuit's decisions and others like it might be incorrect. So, we're not putting any limits on how you can argue the merits of the public policy issue. So, letter briefs not to exceed, what do you say, 10 pages, Stan? 15 pages? 15. Okay, we'll go in the middle. 15 page letter briefs simultaneously filed by the close of business on December 22nd. Okay? Okay, thank you very much, Mr. Paulson. You've got your couple of minutes of rebuttal. Very simple because I think that we all agree really on the reason of the appeal and obviously we will abide by the court's instructions. Just to clarify with respect to the question that Judge Marcos posed, I think that the issue of whether you don't, even if you don't move to vacate, you can then reserve those defenses. I think that in our brief, we mentioned specifically that it's resolved by Chapter 207 of the Fair Arbitration Act, which says, which is very different than Section 9, that it goes to domestic awards. And so, 207, that says that the only, that the award should be confirmed, a New York Convention award, which should be confirmed unless the court finds and that apply any of the grounds set for in the convention itself. Quick question for you and you'll brief it, but I'm just curious what your answer was. Your colleague argues that the claim that there was corruption in the formation of the contract itself falls outside the scope of Article V. A, is that what the Second Circuit held? And B, do you agree with that? I know there are cases from the Second Circuit on that issue. I disagree. First of all, I don't believe public policy, the issue of corruption within public policy is restricted to the conduct of the arbitrators, which is what the Second Circuit seems to imply by saying that you need to prove that corruption occurred during the arbitration proceeding. I think that will go more is to the other grounds that are in the case, that are in Article V. A. However, I believe that when they talk about public policy, they talk about any fundamental notion of fairness that a state has adopted, like due process or could be corruption. We have a number of conventions forbidding corruption. We have the Foreign Practice Act. All those conventions and statutes have enacted that people cannot go around the world committing corruption. We believe that is a public policy accepted by the United States. We believe that, yes, and just to give you a reference, just last month, the Supreme Court of England annulled an award of $10 billion against Nigeria in the same situations that here. The arbitrators have denied there was corruption. They say, not only, and the arbitrators were Lord Hoffman, which is one of the most important juries in the history of England, and the Supreme Court of England said, no, they just turned their head around and didn't see what to vacate this award. I'm not going to confirm it, because it's clear to the court that there was corruption here. This is an evolving area, I have to say. Even if my argument is denied, I know this is not the first time we are going to be here with this argument. Corruption is obviously evolving in the present world as an issue that needs to be addressed, like in this moment was piracy or in this moment was slavery. We are dealing with an issue that I don't believe the courts in the United States still have a way to go to come to really what is the standard that needs to be applied here. So I say that's my opinion as to why. I understand, and you'll have the opportunity to fully brief it as well, Mr. Paulson. Thank you. Thank you very much, Your Honor. Thank you both very much. We're adjourned for today.